| | |
|---|---|
| Agroindustrial del RioFrio | 3.13 percent |
| Flores del Hato Ltda. | 3.10 percent (all others rate) |
| Flores el Aljibe | 3.10 percent (all others rate) |
| Flores La Mana | 3.10 percent (all others rate) |
| Flores el Canelon Ltda. | 3.10 percent (all others rate) |
| Flores Calima | 3.10 percent (all others rate) |
| Jardines de Chia Ltda. | 0.00 percent |
| Queen's Flowers de Colombia Ltda. | 0.00 percent |

ORDERED that within ten days from the date of this Order the three importers of the fresh cut flowers produced by the above named Columbian companies will give security or a bond in the amount of one and a half million ($1,500,000.00) dollars in order to indemnify the United States for any costs and damages it may suffer as the result of the preliminary injunction, and it is further

ORDERED that the parties are directed to accelerate the pace of the litigation, and it is further

ORDERED that the joint status report and proposed briefing schedule for this matter shall be filed with the court by Friday, September 13, 1996, and it is further

ORDERED that the Temporary Restraining Order dated August 19, 1996, is hereby vacated, and it is further,

ORDERED that plaintiffs' application is denied in all other respects.

PMC SPECIALTIES GROUP, INC., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND JEIL MOOLSAN CO., INC., DEFENDANT-INTERVENOR

Court No. 94–12–00781

(Decided August 30, 1996)

*Collier, Shannon, Rill & Scott (David A. Hartquist, Mary T. Staley,* and *David C. Smith, Jr.)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(A. David Lafer,* at oral argument: *Jeanne E. Davidson);* of counsel: *Stacy J. Ettinger,* Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

*Mudge Rose Guthrie Alexander & Ferdon LLP (N. David Palmeter, Richard G. King, Richard J. Burke,* and *Christopher J. Zimpo)* for defendant-intervenor.

OPINION

MUSGRAVE, *Judge:* Plaintiff PMC Specialties Group, Inc. ("PMC"), brings this action to contest the final determination of the Department of Commerce ("Commerce") in an antidumping duty investigation of saccharin from Korea, as published in the *Federal Register* as *Final Determination of Sales at Not Less Than Fair Value: Saccharin from Korea,* 59 Fed. Reg. 58,826 (Nov. 15, 1994) *("Final Determination").* The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c).

DISCUSSION

PMC raises three issues. First, PMC asserts that the sole respondent producer from Korea, Jeil Moolsan Company ("JMC"), maintained a dual accounting system, with one set of records for exports and the other set for domestic sales. PMC argues that Commerce failed to verify the existence of such dual accounting system and therefore erred in its determination. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Judgment Upon the Agency Record (Pl.'s Br.), at 8–14. PMC argues that Commerce also erred in its determination because it failed to address in its verification report whether an offset to general and administrative ("G&A") expenses for miscellaneous income was related to the production of saccharin. Pl.'s Br. at 14–17. Lastly, PMC argues that Commerce failed to investigate whether exchange rate gains and losses were tied to production or foreign currency loans, and as a result wrongly included such losses as a debt expense which improperly lowered JMC's cost of production. Pl.'s Br. at 18–20.

In reviewing a final determination of Commerce, the Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20 (1966). Moreover, the Court may not "displace the [ITA's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera v. NLRB,* 340 U.S. at 488. However, it is not sufficient to examine only the evidence that allegedly sustains the agency's conclusion. "The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Id.*

I. DUAL ACCOUNTING SYSTEM

PMC argues that it alerted Commerce to the possibility of JMC using a dual accounting system in its preverification comments, and also in its

prehearing brief and at the hearing. Pl.'s Br. at 9. PMC points out that in its preverification comments, it asserted that JMC's questionnaire response indicated that JMC separately tracked costs for domestically-sold saccharin and exported saccharin, and that JMC reported costs in its questionnaire response differently from the way it reported costs for inventory purposes. *Id.* PMC argues that Commerce did not fulfill its obligation under the statute to verify a respondent's questionnaire response, because the verification report was "conspicuously silent" on the question of dual accounting. *Id.* PMC argues that Commerce must go beyond its normal verification methodology because the "typical procedures the Department uses to examine cost data" are insufficient to verify certain JMC responses. *Id.* at 11–14. PMC asserts that by not going beyond normal verification procedures and examining the question of dual accounting with closer scrutiny, Commerce failed in its obligation under the statute. *Id.* at 14. Thus, PMC argues, Commerce's final determination is not in accordance with law and is unsupported by substantial evidence. *Id.*

Commerce argues that it conducted a detailed and comprehensive verification of JMC's cost accounting methodology. Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment on the Administrative Record (Def.'s Br.), at 7. Commerce points out that during verification it performed several tasks directly related to cost accounting. Def.'s Br. at 7–8. Regarding PMC's assertions that JMC separately tracks domestic and export sales, Commerce points to JMC's explanation that the export and domestic notations in its accounting records simply exist to allow the company to track sales costs associated with the different destinations of the finished products. *Id.* at 8–9. Commerce argues that nothing found at verification contradicts this explanation. *Id.* at 9. Commerce further argues that JMC's admitted deviation from its normal cost accounting methodology was done to comply with Commerce's questionnaire reporting requirements, and does not indicate a dual accounting system. *Id.* In sum, Commerce argues that PMC has not pointed to evidence in support of its assertions and that a thorough verification did not uncover such evidence. Thus, argues Commerce, its determination is lawful and should be sustained. *Id.* at 9–10.

For its part, JMC argues that it submitted a detailed questionnaire response, including detailed explanations of its cost accounting system and methodologies. Memorandum of Points and Authorities of Defendant-Intervenor Jeil Moolsan Company, Inc. in Opposition to Plaintiff's Motion for Judgment on the Agency Record (Def.-Int.'s Br.), at 7. JMC points out that Commerce exhaustively verified and agreed with JMC's cost methodology and calculations. *Id.* at 10–12. JMC argues that PMC rejected JMC's offer for reverification at the hearing and should not now be permitted to a remedy which it expressly rejected. *Id.* at 13. Furthermore, JMC argues that under the law, Commerce has discretion to choose the verification methodology upon which it will rely and is not obligated to comply with specific requests of a party. *Id.* at 14. As long as

Commerce's choice of methodology is supported by substantial evidence on the record, argues JMC, the Court must sustain that methodology used by Commerce. *Id.*

PMC relies upon *Smith Corona Corp. v. United States,* 15 CIT 355, 771 F. Supp 389 (1991), for its argument that this case should be remanded so that Commerce may reverify the issue of dual accounting methodology allegedly used by JMC. In that case, Commerce refused the petitioner's request for further verification of certain advertising expenses. Commerce based its refusal on the respondent's denial that such expenses were incurred, and on information gathered in prior administrative reviews. The Court in that case remanded the expense issue for reverification because it was unclear from the verification whether expenses were attributed to the proper market and to the proper party. *Id.,* 15 CIT at 366–67, 771 F. Supp. at 399–400.

In the present case, there are no such uncertainties. Commerce did not merely rely on the responses of JMC, or on past verifications, but thoroughly examined the issue of cost accounting in the verification process and was satisfied that no dual accounting methodology existed. The verification included the following tasks related to cost accounting:

- discussed with JMC its financial and cost accounting system and any areas where submitted information varies from the accounting system and reviewed the flow of accounting information.
- discussed the methodology used by respondent to develop the reported per unit production costs.
- traced the cost of goods manufactured to the cost of goods manufactured schedule in the financial statements.
- traced the cost of goods manufactured to the cost of goods manufactured detail ledger.
- traced the transfers to other accounts to the cost of goods manufactured detail ledger.
- examined or discussed with JMC officials at least 27 separate cost-related matters.

Verification Report on the Cost of Production and Constructed Value Information of Jeil Moolsan Company, Inc. ("JMC Cost Verification Report"), at 6–10. In selecting these procedures for verification, Commerce acted within the discretion given to it by law. *See Monsanto Co. v. United States,* 12 CIT 937, 947, 698 F. Supp. 275, 283 (1988). The information gathered as a result of these procedures constitutes substantial evidence on the record in support of Commerce's determination. The existence of domestic/export notations in JMC's accounting records and the deviation from normal accounting relied upon by PMC appear to have been adequately explained through the verification process to the satisfaction of Commerce. Indeed, as Commerce states in its determination, the home market was not viable, thus warranting the use of third country sales in determining foreign market value. *Final Determination* at 58,827. Accordingly, Commerce's determination with

respect to the asserted dual accounting question is supported by substantial evidence and in accordance with law.

## II. MISCELLANEOUS INCOME OFFSET

PMC argues that Commerce failed to verify whether the miscellaneous income JMC reported in its cost response was tied to the production of saccharin. Pl.'s Br. at 14–17. Commerce argues that it must prioritize its examination of financial and accounting records according to time availability, the respondent's level of compliance, and the relative dollar value of a company's various accounts, and accordingly treated miscellaneous income with a lower level of scrutiny. Def.'s Br. at 11. Commerce argues that it nonetheless performed an exhaustive verification of JMC's cost responses and found no discrepancies which called into question JMC's representations concerning miscellaneous income. *Id.*

Commerce is not required to examine in detail every aspect of a respondent's questionnaire. *Monsanto,* 12 CIT at 944, 698 F. Supp. at 281. As the Court in Monsanto explained,

> [v]erification is a spot check and is not intended to be an exhaustive examination of the respondent's business. [Commerce] has considerable latitude in picking and choosing which items it will examine in detail. Furthermore, [Commerce] may accept * * * post verification information which indicates that the original questionnaire response was correct or clarifies it.

*Id.,* (citing *Hercules, Inc. v. United States,* 11 CIT 710, 726, 673 F. Supp. 454, 469 (1987)). In *Bomont Industries v. United States,* 14 CIT 208, 733 F. Supp 1507 (1990), the Court explained that

> [V]erification is like an audit, the purpose of which is to test information provided by a party for accuracy and completeness. Normally, an audit entails selective examination rather than testing of an entire universe. Hence, evasion is a common possibility, but only when audits uncover facts indicating the actuality thereof are auditors compelled to search further.

*Id.,* 14 CIT at 209–210, 733 F. Supp at 1508. *See also Torrington v. United States,* 68 F.3d 1347 (Fed. Cir. 1995) (Whether Commerce erred in deciding not to verify a questionnaire response requires a clear error of judgment). Thus Commerce has discretion in choosing which items it will verify, and so long as Commerce has not uncovered facts in the process of verification that point to an improper accounting of miscellaneous income as it relates to production costs, Commerce is not compelled to search further. Commerce may, if it chooses, accept a post-verification explanation of a response so that such response may be clarified.

The record in this case indicates that Commerce chose not to examine JMC's miscellaneous income account. However, Commerce did verify exhaustively JMC's cost response in general when it verified G&A worksheets and ledgers with selling, general and administrative expenses on

the financial statements, and when it recalculated G&A expenses. JMC Cost Verification Report at 10–11. Commerce did not uncover facts pointing to an improper accounting of miscellaneous income and found satisfactory JMC's explanations set forth in its prehearing brief. Thus Commerce acted within the discretion given it under the law, and its determination is supported by substantial evidence on the record.

### III. FOREIGN EXCHANGE LOSSES

PMC argues that Commerce erred because it failed to investigate whether foreign exchange losses were related to JMC's cost of manufacture and by not requiring JMC to provide complete information concerning such losses. Pl.'s Br. at 18–20. PMC further argues that Commerce should use adverse information in the absence of a response from JMC. Plaintiff's Reply to the Defendant's and Defendant-Intervenor's Opposition to Plaintiff's Motion for Judgment Upon the Agency Record at 18.

Commerce argues that it was unable to establish a nexus between exchange losses and cost of manufacture, and therefore considered it inappropriate to include such losses in the cost of manufacture. Def.'s Br. at 13–14. Commerce also argues that JMC was cooperative in the investigation and should not be punished with an adverse inference, as suggested by PMC. *Id.* at 14.

JMC argues that Commerce verified its questionnaire responses relating to foreign exchange gains and losses, but submits that it would have been within Commerce's discretion to rely solely on JMC's financial statements. Def.-Int.'s Br. at 17–19. JMC argues that when Commerce finds a response to be complete and a respondent's explanations sound, Commerce need not request further information. *Id.* at 19. JMC further argues that under Generally Accepted Accounting Principles, foreign exchange gains and losses are not part of cost of manufacture but rather part of the cost of production. *Id.* at 20. Lastly, JMC argues that PMC first requested that Commerce include foreign exchange losses in cost of production and now raises the argument that exchange losses are part of cost of manufacture for the first time and should not be permitted to bring this argument before the Court. *Id.* at 20–21.

As with miscellaneous income, explained above, Commerce has discretion in choosing which items it will verify, and so long as Commerce has not uncovered facts in the process of verification that point to an improper accounting of foreign exchange gains and losses as they relate to production costs, Commerce is not compelled to search further. Commerce verified JMC's responses regarding foreign exchange gains and losses against JMC's financial statements, and was satisfied that the gains and losses were properly accounted for. JMC Cost Verification Report at 12. Thus Commerce's actions regarding foreign exchange losses are supported by substantial evidence and is in accordance with law.

## CONCLUSION

For the foregoing reasons, Commerce's final determination is supported by substantial evidence and otherwise in accordance with law. Accordingly, PMC's motion for judgment on the administrative record is denied in its entirety, and Commerce's final determination is affirmed in all respects.